## UNITED STATES ex rel. AUSTIN v. WILLIAMS et al.

(District Court, E. D. Louisiana. April 30, 1925.)

No. 17952.

1. **Habeas corpus ⊂⇒85(2)—Governor's warrant prima facie evidence of facts recited.**

In habeas corpus proceedings by one sought to be extradited to another state, the warrant of the Governor of the asylum state is prima facie evidence of all that is therein recited, including the identity of the relator, the fact that he is properly charged with crime in the demanding state, and the fact that he is a fugitive from the justice of that state.

2. **Habeas corpus ⊂⇒85(2)—Criminal law ⊂⇒662(2)—In habeas corpus proceeding, affidavits may be used as evidence against relator.**

A habeas corpus proceeding by one under arrest for rendition to another state is civil, and not criminal, and relator is not entitled to be confronted with the witnesses against him, but affidavits may be used as evidence.

3. **Habeas corpus ⊂⇒45(2) — Accused should not be discharged on habeas corpus, except when absolutely necessary to protect his legal rights.**

An accused, held for rendition to another state as a fugitive from justice, should not be discharged on habeas corpus by a federal court, except where absolutely necessary to protect his legal and constitutional rights, and upon evidence practically conclusive.

4. **Extradition ⊂⇒22—Constitutional provision for interstate extradition to be liberally construed.**

The constitutional provision for interstate extradition should be construed liberally, to effect its purpose.

5. **Habeas corpus ⊂⇒85(2)—Governor's warrant conclusive on disputed facts.**

Where there is contradictory evidence on the question whether accused was in the state of the alleged crime when it was committed, the finding of the Governor of the rendering state, as evidenced by his issuance of a warrant, will be taken as conclusive in habeas corpus proceedings.

Habeas Corpus. Petition by the United States, on relation of Hart Austin, alias Frank Smith, against George E. Williams and others, for writ of habeas corpus. Writ discharged.

Ulic J. Burke and Jules A. Grasser, both of New Orleans, La., for relator.

Robert H. Marr, Dist. Atty., of New Orleans, La., for respondent.

BEATTIE, District Judge. The relator petitioned for and obtained a writ of habeas corpus, alleging, among other things, that he was held and imprisoned by the sheriff of the parish of Orleans, La., on a charge of crime said to have been committed in Utah, from which state he is charged with being a fugitive from justice, and that he is being held by virtue of a warrant of arrest and deportation issued by the Governor of Utah, and that said imprisonment is illegal and in violation of the Constitution and laws of Louisiana, and of the United States, for the following reasons: (1) That he is not the party named in the warrant; (2) that he is not legally charged with crime in the state

of Utah; (3) that he is not a fugitive from justice; (4) that the warrant of the Governor of Utah does not show that the demand for his arrest was accompanied by a copy of an indictment or an affidavit charging him with having committed any crime known to the state of Utah and certified as authentic by the Governor of that state; (5) that the warrant of the Governor of the state of Louisiana fails to state that the Governor of Utah demanded his apprehension and delivery as a fugitive from Utah; (6) that the demand was not accompanied with an indictment certified as authentic by the Governor of Utah.

To this petition respondent made a return, alleging that he held the relator by virtue of a capias, directed to him by the criminal district court, as a fugitive from justice. Respondent further alleges that the detention of relator is legal; that he is the person named in the warrant, and is legally charged with crime in Utah, and is a fugitive from the justice of that state. Without directly alleging that he holds the relator under a warrant of the Governor of Louisiana, the respondent alleges that the warrant issued by the Governor of Louisiana is based upon a requisition of the Governor of Utah, accompanied by a certified copy of the affidavit charging relator with robbery and grand larceny, which proceedings, together with the warrant of the Governor of Louisiana for the arrest of relator, are annexed as a part of his return.

While not directly alleging that he holds the relator under this warrant of the Governor of Louisiana, I conclude that his allegation of the existence of this warrant and the fact that he annexes it to his return is sufficient to show that the relator is held under that warrant. In his traverse of the respondent's return, relator alleges that he is entitled to be discharged because the affidavit, copy of which is annexed to his petition, is insufficient, and is contradicted by the recitals of the request of the Governor of Utah. The affidavit here referred to is the affidavit made by one of the New Orleans detectives, upon which the capias referred to in the respondent's return as having been directed to him by the criminal district court was issued. We may, I think, disregard this warrant, in view of the warrant of the Governor of Louisiana.

In his traverse, relator further alleges that he is entitled to discharge because the requisition of the Governor of Utah does not show the demand for his arrest was accompanied by copy of indictment or affidavit

charging him with crime in Utah, certified as authentic by the Governor of Utah, and the warrant of the Governor of Louisiana fails to state upon what ground the Governor of Utah demanded his apprehension and delivery as a fugitive from Utah; also because the demand of the Governor of Utah is not accompanied by an indictment or affidavit certified as authentic, and that the demand did not recite that it was accompanied by an indictment or affidavit certified as authentic and authenticated according to the laws of Utah or of the United States. Relator also alleges that he is not the person named in the warrant or requisition, that he is not legally charged with crime in Utah, and that he is not a fugitive from justice.

The requisition of the Governor of Utah recites that it appears, by papers annexed, certified to be authentic, and duly authenticated in accordance with the laws of Utah, that Art Austin stands charged with the crime of robbery and grand larceny, certified to be a crime under the laws of Utah. This requisition also recites that it has been represented to him that Austin had fled from justice. Attached to the requisition is an application by the district attorney in Utah; copy of complaint, sworn to and charging Austin and two others with having committed, on December 12, 1923, robbery and grand larceny. This complaint recites the details, facts, and description of the property alleged to have been taken. There also accompanies the requisition a copy of the warrant to the sheriff of Utah directing arrest of Austin and others; also original affidavit of A. R. Gardner (who made the first affidavit or complaint above referred to), dated March 17, 1925, and charging that on December 12, 1923, Austin and others committed robbery and grand larceny (giving details of fact and property). This affidavit further states that Art Austin, held in New Orleans, is one of the defendants, and is a fugitive from justice from Utah, awaiting extradition from Louisiana to answer the charges of robbery and grand larceny.

There also appears in the record another original affidavit of A. R. Gardner, dated March 17, 1925, stating that the man whose picture is attached, marked Exhibit A and made part of the affidavit, is the man who robbed affiant on December 12, 1923, as charged in the complaint, and is the man who is named Art Austin. There also appears in the record an original affidavit of James M. Donaldson, dated March 18, 1925, in Utah, wherein it is stated that in the latter part of November and the first part of

December, 1923, prior to the robbery of the Sandy City Bank, he saw, on a number of occasions in Salt Lake City, the man whose picture is attached and marked Exhibit A, and that on December 10, 1923, in Salt Lake City, he saw the man whose picture is attached, in company with Jack Dillon and Henry Laughter (the others charged in the affidavit with the same offense). There appears in the record the photograph marked Exhibit A.

The warrant of the Governor of Louisiana is signed by himself and the assistant secretary of state, and states that upon the production of the requisition of the Governor of Utah, and upon the production of requisite evidence to justify same, which is on file in the office of the secretary of state, he directs the sheriff and any lawful officer of any of the parishes in Louisiana within whose limits Art Austin, who stands charged with the crime of robbery and grand larceny in Utah, fugitive from justice of the said state of Utah, for whom requisition has been issued, may be found to apprehend the said Art Austin and deliver him to the named agent of the state of Utah. Though other causes of illegality are alleged, the ones particularly urged are that the relator is not the man named in the requisition of the Governor of Utah, and in the warrant of the Governor of Louisiana, and that he is not a fugitive from the justice of the state of Utah.

[1] Under the decisions of the United States Supreme Court, it seems to be settled that in habeas corpus proceedings the warrant of the Governor of the so-called asylum state (Louisiana in this case) is prima facie evidence of all that is therein recited, including the identity of the relator, the fact that he is properly charged with crime in the demanding state, and the fact that he is a fugitive from the justice of the latter state. The duty is placed upon the Governor of the asylum state to determine all questions of fact, before issuing his warrant, and while his decision of these facts is not absolutely conclusive, the incorrectness of his decision can be shown in the courts only by clear and satisfactory evidence, and some of the United States Supreme Court decisions seem to go so far as to say conclusive evidence or admissions.

In this case the relator, as a witness in court, testified that his name was Louis Hart Austin, and that he had never been in Utah. Harries, agent of the Governor of Utah, testified that he knew relator and that he was the man wanted in Utah. On cross-ex-

amination, however, he admitted that he had never seen the relator in Utah, but that he knew that he was the man for which the papers were issued, and that relator went by the name of Art Austin, Hart Austin, and Louis Hart Austin. Harries' source of information, since he had never seen him in Utah, is not stated.

In cross-examination, the relator states that he was arrested in Memphis in January, 1924, in the apartment of Dillon, who was also arrested. He states that the photograph presented to him (which, I assume, is the photograph now in the record) was the photograph of himself taken in January, 1924. He states that he was released to the Canadian authorities, who wanted him. He states that he served time in Arkansas for selling whisky, and was pardoned there and released to the United States government and turned over to Canada, where he was tried and acquitted. He also states that he served time in the Texas penitentiary from 1914 to 1919, and then was released on full pardon after investigation by the Governor. One of the witnesses for the respondent testified that relator was arrested in Memphis with a man named Dillon, alias Brown, and that on Dillon was found $1,800 in Liberty bonds charged to have been stolen in Utah.

The Governor of Louisiana seems to have given to the relator quite a full hearing before the warrant of rendition was signed. A large number, if not all, of the witnesses sworn in court on behalf of the relator to prove that he was not a fugitive from justice, testified that they had also given their testimony before the Governor of Louisiana. The Governor of Louisiana therefore seems to have made a full investigation before issuing his warrant, and under the law it is the duty of the Governor to determine all questions of fact before issuing his warrant, and while his decision is not absolutely conclusive, it appears from the Supreme Court decisions that any incorrectness in his decision that the relator was a fugitive from justice can be shown in the courts only by clear, practically conclusive evidence, or admissions to the contrary. The photograph of the relator in the record, admitted by him to be genuine, is identified by Gardner and by Donaldson, in their affidavits in the record and accompanying the requisition papers, as the picture of the accused seen in Utah.

[2] At the trial relator objected to the use of these affidavits as evidence in court, on the ground that he was entitled to be confronted by the witnesses, and to have the

right to cross-examine them. This is not a criminal case, controlled by the constitutional right of an accused to be confronted by witnesses, but is a civil case, and I conclude from this, and from the decisions, that the relator's objection on this ground is not supported by law, and that the affidavits can be properly considered as evidence by the court. The opinions in a number of reported cases refer to the use of affidavits. In Ex parte Reggel, 114 U. S. 642, 652, 5 S. Ct. 1148, 1153 (29 L. Ed. 250) the court said: "Upon the executive of the state in which the accused is found rests the responsibility of determining, in some legal mode, whether he is a fugitive from the justice of the demanding state. * * * We are not justified by the record before us in saying that the Governor of Utah should have held the evidence inadequate to establish that fact. The warrant of arrest refers to an affidavit taken before a notary public of Pennsylvania, showing Reggel's flight from that commonwealth. There was no such affidavit; but the reference, manifestly, was to the affidavit made by Frederick Gentner, which recited the finding by the grand jury * * * of a true bill of indictment, * * * stating that he 'is a fugitive from justice,' and was then in Salt Lake City, Utah Territory. * * * The reasonable inference is, that the affidavit was made in the court where the prosecution is pending, and that it is one of the papers accompanying the requisition of the Governor of Pennsylvania, and which he certified to be authentic."

At page 653 (5 S. Ct. 1154): "It is contended that Gentner's affidavit that Reggel is a fugitive from justice is the statement of a legal conclusion, and is materially defective in not setting out the facts upon which that conclusion rested. Although that statement presents, in some aspects of it, a question of law, we cannot say that the Governor of Utah erred in regarding it as the statement of a fact, and as sufficient evidence that appellant had fled from the state in which he stood charged with the commission of a particular crime, on a named day, at the city and county of Philadelphia; especially as no opposing evidence was brought to his attention. If the determination of that fact by the Governor of Utah, upon evidence introduced before him is subject to judicial review upon habeas corpus, the accused, in custody under his warrant, which recites the demand of the Governor of Pennsylvania, accompanied by an authentic indictment charging him, sub-

stantially in the language of her statutes, with a specific crime committed within her limits, should not be discharged merely because, in the judgment of the court, the evidence as to his being a fugitive from justice was not as full as might properly have been required, or because it was so meager as, perhaps, to admit of a conclusion different from that reached by him."

In Roberts v. Reilly, 116 U. S. 80, 83, 6 S. Ct. 291, 29 L. Ed. 544, it appears that on the hearing before the District Court, among the documents put in evidence was the application by the district attorney for requisition, supported by affidavits showing the accused had fled from justice. For other cases in which affidavits were used in court without confronting the accused with the witnesses, see Munsey v. Clough, 196 U. S. 364, 370, 374, 25 S. Ct. 282, 49 L. Ed. 515; Appleyard v. Massachusetts, 203 U. S. 223, 27 S. Ct. 122, 51 L. Ed. 161, 7 Ann. Cas. 1073; Marbles v. Creecy, 215 U. S. 65, 30 S. Ct. 32, 54 L. Ed. 92. In this last case, the accused raised the point that he was not present before the Governor who issued the rendition warrant, and was not given an opportunity to meet the witnesses face to face.

[3] It is clear, from all the decisions of the United States Supreme Court, that the accused should not be discharged in such proceedings as this, except where it is absolutely necessary to do so to protect his legal and constitutional rights.

[4] Scott on Interstate Rendition, § 187, states: "During the past 55 years, the Supreme Court has passed upon 26 cases relating to interstate rendition. * * * It will be interesting to note the fact, in this connection, that of the 26 cases so finally adjudicated, only one alleged fugitive from justice secured his discharge as a result of the finding of that court. See Hyatt v. People ex rel. Corkran (1903), 188 U. S. 691." The 26 cases referred to by Scott end with Innes v. Tobin, 240 U. S. 127, 36 S. Ct. 290, 60 L. Ed. 562. In the 3 cases since that time, reported in the United States Supreme Court Reports, ending with 265 U. S., I find none in which the fugitive obtained his discharge.

In Whitten v. Tomlinson, 160 U. S. 245, 16 S. Ct. 303, 40 L. Ed. 406, the court said: "A warrant of extradition of the Governor of a state, issued upon the requisition of the Governor of another state, accompanied by a copy of an indictment, is prima facie evidence at least that the accused had been indicted and was a fugitive from justice,

and when the court in which the indictment was found has jurisdiction of the offense (which there is nothing in this case to impugn) is sufficient to make it the duty of the courts of the United States to decline interposition by writ of habeas corpus, and to leave the question of the lawfulness of the detention of the prisoner in the state in which he was indicted to be inquired into and determined, in the first instance, by the courts of the state, which are empowered and obliged, equally with the courts of the United States, to recognize and uphold the supremacy of the Constitution and laws of the United States."

On page 247 (16 S. Ct. 303). the court said: "There could be no better illustration than this case affords of the wisdom, if not necessity, of the rule, established by the decisions of this court, above cited, that a prisoner in custody under the authority of a state should not, except in a case of peculiar urgency, be discharged by a court or judge of the United States upon a writ of habeas corpus, in advance of any proceedings in the courts of the state to test the validity of his arrest and detention. To adopt a different rule would unduly interfere with the exercise of the criminal jurisdiction of the several states, and with the performance by this court of its appropriate duties."

In Appleyard v. Massachusetts, 203 U. S. 228, 27 S. Ct. 124, 51 L. Ed. 161, 7 Ann. Cas. 1073, the court said: "And while a state should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state."

In the Matter of Strauss, 197 U. S. 324, 25 S. Ct. 535, 49 L. Ed. 774, referring to interstate rendition, we find in the syllabus: "Words in the Constitution of the United States do not ordinarily receive a narrow and contracted meaning, but are presumed to have been used in a broad sense with a view of covering all contingencies."

Again in the syllabus we find: "While courts will always endeavor to prevent any wrong in the extradition of a person to answer a charge of crime ignorantly or wantonly made, the possibility cannot always be guarded against, and the process of extradition must not be so burdened as to make it practically valueless."

In Biddinger v. Commissioner of Police,

245 U. S. 128, 38 S. Ct. 41, 62 L. Ed. 193, syllabus, we find: "Article IV, § 2, of the Constitution intends, not to express the law of extradition as usually prevailing among independent nations, but to provide a summary executive proceeding whereby the states may promptly aid one another in bringing accused persons to trial. Its provisions, and the statutes passed in execution of them, should be construed liberally to effectuate this purpose."

On the questions of the identity of the relator and whether he is a fugitive from justice, we find that the decisions of the United States Supreme Court make it clear that the decision on these questions by the Governor is prima facie correct, whether or not there be a recital of his decision on these questions in the warrant of rendition, and that the Governor's decision will not be overthrown by the courts, except upon evidence clearly, and as some of the decisions say conclusively, establishing the Governor's error.

In this case there was offered at the trial evidence consisting principally of the picture of the accused, and the affidavits attached to the requisition papers identifying the accused and showing that he was a fugitive from justice. On behalf of the accused, contradictory evidence was offered, but considering the cross-examination of these witnesses, bringing out their means of knowledge and their probable recollection of the facts, and doubts as to the correctness of their testimony, and considering further that they, or most of them, gave similar testimony before the Governor of Louisiana, it cannot be held that the evidence offered by the accused conclusively or clearly overthrows the testimony against the accused.

In the earlier decisions it was stated that the question had not been settled by the Supreme Court whether the decision of the Governor was not final, and whether this decision could be reversed by the courts, but the later decisions indicate that the Governor's decision is not final, but can be overthrown only by clear, and practically conclusive, evidence. In Roberts v. Reilly, 116 U. S. 95, 6 S. Ct. 299, 29 L. Ed. 544, the court said:

"It must appear, therefore, to the Governor of the state to whom such a demand is presented, before he can lawfully comply with it, first, that the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the

6 F.(2d)—2

Governor of the state making the demand; and, second, that the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand. The first of these prerequisites is a question of law. * * * The second is a question of fact, which the Governor of the state upon whom the demand is made must decide, upon such evidence as he may deem satisfactory. How far his decision may be reviewed judicially in proceedings in habeas corpus, or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court. It is conceded that the determination of the fact by the executive of the state in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof."

Hyatt v. Corkran, 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657, is the one case of all of those in the Supreme Court above referred to wherein the accused was discharged. In the cited case, at page 711 (23 S. Ct. 459), the court said: "In the case before us it is conceded that the relator was not in the state at the various times when it is alleged in the indictments the crimes were committed." For this reason, relator was discharged, and, as stated above, is the only one that the Supreme Court has ever discharged in the many cases referred to.

[5] This cited case was taken up from the New York Court of Appeals on writ of error. At page 710 (23 S. Ct. 458) the court says: "In the case before us the New York Court of Appeals held that, if upon the return to the writ of habeas corpus it is clearly shown that the relator is not a fugitive from justice, and there is no evidence from which a contrary view can be entertained, the court will discharge the person from imprisonment, but that mere evidence of an alibi, or evidence that the person demanded was not in the state as alleged, would not justify his discharge, where there was some evidence on the other side, as habeas corpus was not the proper proceeding to try the question of the guilt or innocence of the accused."

This decision of the Court of Appeals was affirmed, and the Supreme Court, at page 711 (23 S. Ct. 458) said: "We are of opinion that the warrant of the Governor is but prima facie sufficient to hold the accused, and that it is open to him to show by admissions, such as are herein produced, or by other conclusive evidence, that the charge upon which extradition is demanded assumes the absence of the accused person from the State at the time the crime was, if ever, committed. * * * If upon a question of fact made before the Governor, which he ought to decide, there were evidence *pro* and *con* the courts *might not be justified in reviewing the decision of the Governor upon such question.* In a case like that, *where there was some evidence sustaining the finding, the courts might regard the decision of the Governor as conclusive."* (Italics mine.)

In Munsey v. Clough, 196 U. S. 372, 25 S. Ct. 284, 49 L. Ed. 515, the court said: "The questions before the Governor * * * are whether the person demanded has been substantially charged with a crime, and whether he is a fugitive from justice. The first is a question of law and the latter is a question of fact, which the Governor, upon whom the demand is made, must decide upon such evidence as is satisfactory to him. Strict common-law evidence is not necessary. * * * The issuing of the warrant by him, with or without a recital therein that the person demanded is a fugitive from justice, must be regarded as sufficient to justify the removal, until the presumption in favor of the legality and regularity of the warrant is overthrown by contrary proof in a legal proceeding to review the action of the Governor."

The above case, holding that common-law evidence is not necessary, would seem to justify the use of the affidavits used in this case. Affidavits were used in that case (page 374). On page 374 (25 S. Ct. 285) the court said: "When it is *conceded, or when it is so conclusively proved, that no question can be made* that the person was not within the demanding state when the crime is said to have been committed, and his arrest is sought on the ground only of *a constructive presence* at that time, in the demanding state, then the court will discharge the defendant. * * * But *the court will not discharge a defendant* arrested under the Governor's warrant *where there is merely contradictory evidence on the subject of presence in or absence from the state,* as habeas corpus is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused." (Italics mine.)

This decision establishes that, to justify a discharge on habeas corpus, it must be conceded or conclusively proven that the accused was not in the demanding state when

the offense was committed. "Mere contradictory evidence" is not sufficient.

In McNichols v. Pease, 207 U. S. 112, 28 S. Ct. 58, 52 L. Ed. 121, the court, speaking of one in custody as a fugitive from justice, said: "He should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States."

In Ex parte Hoffstot (C. C.) 180 F. 240, the District Judge, in a case said by Scott in his book on Interstate Rendition to have been affirmed by the United States Supreme Court, held that even circumstantial evidence quite meager in its nature was sufficient. In that case (page 243) the only evidence seems to have been what may be called hearsay evidence given in the testimony of the district attorney, who was reporting the nature of the evidence before the grand jury that indicted the accused. The court said (page 243):

"Mr. Seymour, the assistant district attorney of Allegheny county, was examined, and he testified that there was evidence before the grand jury, upon which this indictment of conspiracy was found, as to transactions tending to prove the conspiracy which extended over a period from about the 1st of May to about the 1st of July, 1908. The Governor declined to go into the details of these transactions. Upon cross-examination Mr. Seymour was asked whether there was any evidence before the grand jury tending to show any act on the part of Mr. Hoffstot, committed in the state of Pennsylvania when he was physically present there at any time during the period mentioned, to which he at first replied that he did not think there was. He subsequently, however, testified upon further examination that there was circumstantial evidence as to acts by Mr. Hoffstot in the state of Pennsylvania while he was within that state during that period; that there was no direct, positive testimony by any one who saw him there, but there was circumstantial testimony that he was there. This evidence is undoubtedly vague; but I think that ∗ ∗ ∗ there was circumstantial evidence from which a jury would be justified in drawing the inference that he was there on such a day."

Later on the same page the court said: "The provision for the extradition of criminals is essential to the efficient administration of criminal justice. When an indictment and the requisition papers issued by the Governor of the demanding state are regular and sufficient upon their face, and when there is some evidence which, although not of a very satisfactory kind, is sufficient to satisfy the Governor of the surrendering state, and he has issued his warrant for extradition, it is well settled that the judiciary should not interfere on habeas corpus and discharge the prisoner upon technical grounds, unless it is clear that the Governor's action in issuing the warrant plainly contravenes the law."

In Hogan v. O'Neill, 255 U. S. 52, 56, 41 S. Ct. 222, 223 (65 L. Ed. 497), the court said: "Whether in fact he was a fugitive from justice was for the determination of the Governor of New Jersey. The warrant of arrest issued in compliance with the demand of the Governor of Massachusetts shows that he found appellant to be a fugitive, and this conclusion must stand unless clearly overthrown, which appellant has not succeeded in doing."

In view of the facts and law hereinabove stated, it is ordered and decreed that the writ of habeas corpus be discharged, and that the relator be remanded to the custody of the respondent.