**Mary Z. Earles, Appellee, v. Roscoe Leon Earles, Appellant.**

**Gen. No. 45,376.**

Opinion filed June 1, 1951. Released for publication June 22, 1951.

Joseph E. Clayton, Jr., of Chicago, for appellant; Harry G. Fins, of Chicago, of counsel.

Louis Chaet, and Robert R. Porto, both of Chicago, for appellee.

Mr. Justice Feinberg delivered the opinion of the court.

Defendant appeals from an order entered June 14, 1950, finding him in default of payment of alimony under a separate maintenance decree entered on April 21, 1931, and that there was due under said decree $9,599; also allowing attorneys' fees in the sum of $3,000; and entering a rule on defendant to show cause why he should not be held in contempt. The order overruled a previous motion made by defendant to quash the writ of *ne exeat* theretofore issued. The appeal is also from the order of July 13, 1950, finding defendant guilty of contempt for failure to comply with the order of June 14th and directing a writ of attachment to issue. Plaintiff cross-appeals from that part of the order of June 14th which denied plaintiff interest upon the arrearage found due.

Plaintiff on January 27, 1931, filed her bill for separate maintenance against defendant. He was served with summons, and upon a hearing a decree was entered on April 21, 1931, granting plaintiff separate maintenance, and ordering defendant to pay $15 per week for her maintenance, and also of a minor child as well as that of an expected child. On January 27, 1944, plaintiff filed a complaint for divorce. Service was obtained by publication, and on April 14, 1944, a decree for divorce was entered. Defendant moved to New York in October, 1932, and has remained a resident of New York City since that time. Plaintiff remarried on December 16, 1946, and at the time of the hearing in the instant proceeding was separated from her second husband about one year. The two children born of her marriage with defendant are Gloria, who at the time of this hearing was 22 years of age, and Gerald, 18 years.

On August 19, 1949, plaintiff filed a petition in the original separate maintenance action for a writ of *ne exeat*. The petition alleged, *inter alia,* that defendant was then within the limits of the City of Chicago,

on a temporary visit, and would depart from the jurisdiction of the court within twenty-four hours and return to his home in New York City, where he lives and conducts a cleaning business valued at $50,000 and a real estate business, the value of which was unknown to petitioner. The writ was issued *ex parte,* and the order provided that defendant give bond in the amount of $5,000. Defendant was apprehended on the writ. Defendant filed an answer to the petition for *ne exeat* and, later, a motion to quash the writ of *ne exeat.* In the petition for the rule to show cause, plaintiff repeated the allegation contained in the petition for *ne exeat* that defendant was then operating a cleaning and dyeing business in the City of New York worth approximately $50,000, and also had other financial interests in said city.

The matter was referred to a master for hearing, and after evidence heard by him, he found there was $10,125 due from defendant under the decree for separate maintenance from its date to the date of the decree for divorce; that defendant made total payments of $828.56; and that he was entitled to a credit for the children's expense and maintenance in New York City totalling $615, or a total credit of $1,443.56, leaving a balance due from defendant of $8,881.44. He recommended that the motion to quash the writ of *ne exeat* be denied, and that defendant should show cause why he should not be held in contempt for failure to pay the arrearage.

Exceptions were filed by plaintiff to that part of the master's report which allowed the credits for the maintenance of the children in New York City, and for the failure of the master to allow interest on the amount of the arrearage. In the exceptions for the first time, plaintiff made mention of attorneys' fees, setting forth a schedule of services rendered by two lawyers, totalling 120 hours, or 240 hours for both attorneys, at the

rate of $20 per hour, making a total of $4,800. Defendant also filed exceptions to the master's report.

■ The allowance in the decree for separate maintenance of $15 a week was for the support and maintenance of plaintiff and the child and the expected child. How much of it was intended for the plaintiff or the child does not appear from said decree. The allowance to plaintiff for her support under the decree terminated with the entry of the decree of divorce. *Shaw v. Shaw,* 332 Ill. App. 442.

Eighteen years elapsed between the date of the separate maintenance decree and the issuance of the writ of *ne exeat,* and five years elapsed between the date of the decree of divorce and the issuance of said writ.

■ The authority for the writ of *ne exeat* is found in sections 1 and 2 of chapter 97, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 109.439, 109.440]. The statute does not prescribe the showing to be made in any petition or complaint for the issuance of such a writ. We must look to the common law and equitable principles, as interpreted by our courts, governing this remedy. It is an extraordinary writ, which should never be issued except upon the clearest showing that would justify depriving one of his liberty; a writ that is at times made an instrument of abuse.

In *Victor Scale Co. v. Shurtleff,* 81 Ill. 313, a petition in equity for the issuance of a writ of *ne exeat* was filed, and a writ was issued, which later was quashed on motion. It appeared from the petition that a judgment had been entered and a return of execution *nulla bona.* The court said:

"The easy, expeditious and simple course for the plaintiff then to pursue, if the allegations in his petition are true, as we must believe, was, to issue a *capias ad satisfaciendum,* the effect of which would be, to compel him to surrender the property he is charged with concealing, for the benefit of his creditors; or, on

failure to do so, be committed to prison, not because he owes a debt, but because of his attempt to evade the payment of it. This is a fraud, and for such fraud, if proved, imprisonment would follow.

" . . . This proceeding is special, *sui generis,* and is never allowed when the necessity for the writ does not exist. We see no necessity for a resort to it, inasmuch as by proceeding at law in the court in which the judgment was rendered, a complete remedy can be had, much more prompt and efficacious than the one now sought. We do not think a court of equity should interfere when a court of law, or legal process issued by such a court, can afford the party relief as ample and speedy as he could obtain in equity. What is to hinder the execution of a *ca. sa.* to its ultimate results, and in what respect will its execution not be as ample and as efficacious as the writ of *ne exeat?*"

Applying the reasoning of the court to the facts in the instant case, the amount claimed to be due under the decree of separate maintenance could have been reduced to judgment, and upon such a judgment a *capias ad satisfaciendum* could issue if the facts justified it, and the defendant compelled to respond to the latter writ. From plaintiff's petition for *ne exeat,* as well as the one for the rule to show cause, and the evidence, it definitely appears that plaintiff knew where defendent was residing through the 18 years of absence; that he was financially able to respond to any judgment; and that the amount due, reduced to judgment in the separate maintenance suit, could have been readily enforced in New York against the property of defendant.

In *Brophy v. Sheppard,* 124 Ill. App. 512, the petition for the writ of *ne exeat* alleged that defendant was indebted to the petitioner; that defendant lately threatened and gave out that he would speedily leave the State and go to California; that complainant therefore

charged that defendant was about to remove from the State, taking his property with him, and by reason of defendant having sold said property and converted the same into cash, complainant had no adequate remedy at law and that unless the writ issued, complainant would have no way of making the amount of the judgment that might be recovered in the pending suit. This court, in holding the averments of the petition insufficient to justify the issuance of the writ, said (pp. 516, 517):

"There was no occasion in this cause for the use of the extraordinary writ of *ne exeat republica*. This writ, which was originally a high prerogative writ used by the King to prevent, for reasons of state, some person from availing himself of the privilege granted freemen by Magna Charta of going beyond seas without interference, and was afterward used to aid equitable claims by a process similar to that of *capias ad respondendum* in legal claims, was, by our statute, originally enacted in 1827, made to apply to legal as well as equitable demands, and to both in cases where the debt or demand was not due but existed fairly and in expectancy at the time of making application for the writ.

" . . .

"The policy of our law is opposed to imprisonment for debt and in favor of the liberty of the citizen, and a writ of *ne exeat* should not issue in the case of a demand not in judgment, unless there clearly appears under oath, with the application, facts—not conclusions merely—*showing a strong presumption of fraud. Burnap v. Marsh*, 13 Ill., 535; *Malcolm v. Andrews,* 68 Ill. 100.

" . . . No *capias ad respondendum* could ever have been granted on an affidavit containing nothing more. A man may certainly sell and dispose of property and

tell another that he is going to leave the State, without raising a strong presumption of fraud, or even indicating that he will not pay a disputed claim if it is adjudicated against him." (Italics ours.)

■■ There are no facts alleged in the instant petition that defendant left the jurisdiction of the court when he moved to New York City, with any intention to evade the payment under the separate maintenance decree or to defraud the plaintiff of her rights under said decree. We think upon this record the issuance of the writ of *ne exeat* was clearly unjustified and should have been quashed. *Andersen v. Andersen,* 315 Ill. App. 380. There was neither a request for allowance of attorneys' fees by any petition or formal pleading nor any evidence heard as to the reasonable value or character of the services rendered. Without allegation and without any proof, the court inserted in the decree of June 14th an allowance of $3,000 for attorneys' fees. The first intimation that plaintiff was seeking attorneys' fees was contained in the exceptions filed to the master's report. There had been no request before the master verbally or by petition, nor any evidence tendered on the subject of attorneys' fees. This form of procedure adopted in the instant case is without precedent and contrary to settled equity practice. There can be no such allowance of attorneys' fees without proper allegation or proof. *Roth v. Roth,* 284 Ill. App. 71, 72; *Bennett v. Gray,* 333 Ill. App. 143, 145; *Walsh v. Walsh,* 372 Ill. 254; *Podgornik v. Podgornik,* 392 Ill. 124, and cases there cited.

■■ We think the court was correct in disallowing interest. Defendant was equitably entitled to credit for the amount expended upon the children for maintenance while visiting with him in New York. Plaintiff should not be permitted to have any allowance for the support of the children during the period of their visit with defendant.

In the instant proceeding the court acquired jurisdiction of the defendant, only by virtue of the illegal process of 'ne exeat. Since we hold the *ne exeat* invalid, there was no personal service, and the court was without jurisdiction to proceed against defendant *in personam*.

The orders appealed from are reversed and the cause remanded with directions to enter an order quashing the writ of *ne exeat* and for further proceedings in harmony with the views herein expressed.

*Reversed and remanded with directions.*

NIEMEYER, P. J. and TUOHY, J., concur.