GIBSON, et al. *v.* STATE for USE OF CLARK.

Feb. 8, 1954

No. 38881          52 Adv. S. 5          70 So. 2d 30

*Paul G. Swartzfager* and *Raymond C. Swartzfager,* Laurel, for appellants.

*Collins & Collins,* Laurel, for appellee.

ROBERDS, P. J.

The chancery court adjudicated that appellant Gibson had violated his ne exeat bond and rendered a decree against him and his sureties for the sum of $1,500, the amount stated in the bond. The chancellor found that appellant had absented himself from the jurisdiction of the court in such manner and under such circumstances as to constitute a breach of the obligations of the bond.

The only question before us is whether such finding and adjudication were justified under the circumstances of this case.

The conditions of the bond were to either comply with a decree for payment of alimony and child support according to a decree which the court had rendered February 4, 1947, or that appellant "shall remain within the jurisdiction of said court and be amenable to process issuing therefrom to him." It will be seen the obligation is in the alternative—either to comply with said decree or be amenable to process of said chancery court. Appellant did not comply with said decree. The question is did he keep himself amenable to processes of said court?

Here are the circumstances bearing upon that question:

On February 4, 1947, the chancellor granted to Mrs. Clark, who was then Mrs. Gibson, decree for divorce against appellant, adjudicating the amount Gibson should pay as alimony and support of his children. Mrs. Clark remarried, and became Mrs. Faye Geraldine Gibson Clark, in February, 1948. Mr. Gibson also remarried. He got behind with his alimony and child support payments. He had moved to and was living in Shreveport, Louisiana. In December, 1951, Mrs. Clark filed a petition to have Gibson declared in contempt of court for failure to comply with the decree of February 4, 1947. In the meantime counsel for all parties had agreed that Gibson might go to Shreveport where he was employed. On January 2, 1952, citation issued upon the contempt petition and was personally served upon Gibson, who had returned to the jurisdiction of the court. He was arrested and placed in jail. On that day he executed the bond in question and was released from imprisonment. On February 7, 1952, the court adjudicated Gibson in contempt for failure to make his alimony and support payments. That cause was appealed to this Court and

in February, 1953, that case was reversed and remanded by this Court.

While the foregoing cause was pending in this Court, and on July 3, 1952, the present proceeding was instituted by petition asking for decree against Gibson and the sureties on his ne exeat bond for the sum of $1,500, the amount specified in the bond, and, as stated above, a decree was entered against Gibson and his sureties for said amount.

Upon execution of the bond here in suit Gibson was released from jail. He went back to his home in Louisiana. This was without permission. On March 9, 1952, execution issued against Gibson and was returned "No property found." Also, citation issued on the petition under consideration and the officer could not find him and so returned on the process. However, his sureties knew his whereabouts and a brother of Gibson, one of his sureties, so informed the officer and assured him Gibson would be present at the hearing of the petition. Gibson did come from Shreveport to within the jurisdiction of the court on Wednesday before the court convened the next Monday and he was present at this hearing. It will be noted the bond obligated Gibson to be within the jurisdiction of the court so as to be "amenable to process issuing therefrom to him." Only two processes issued from that court—the execution in March and the citation on the filing of this petition. Of course, it was not nece sary for Gibson to be within the jurisdiction of the court for legal service of the execution; therefore, the only process issuing from the court necessitating his personal appearance was the citation on the present petition. The sheriff was informed of his whereabouts and that he would be present at court. He was present. Did the mere fact he was not available for service of personal process on this petition, under the foregoing circumstances, render his sureties liable on his bond? We do not think so.

While a ne exeat bond is more than a bail bond (Muckelrath v. Chezem, 184 Miss. 511, 186 So. 621), yet broadly speaking, it is in the nature of a bail bond—that is to have the principal present and amenable to processes and obey the orders of the court having jurisdiction of the matter. 65 C. J. S., page 284, par. b. Gibson complied with those requirements. The only process requiring his personal appearance was the citation upon the present petition. Its object was to have him personally present in response to the petition. He was there. The court had personal jurisdiction of him. It was legally enabled to, and it did, adjudicate all questions involved in the proceeding. That met the requirements of the bond to make himself amenable to the processes of the court dealing with the subject matter.

But it is urged that Muckelrath v. Chezem, supra, and Johnson v. Johnson, 189 Miss. 561, 198 So. 308, announce a different rule and that such a bond simply prohibits the principal therein from leaving the jurisdiction of the court and if he does that he had violated the bond and made his sureties liable on the bond. The facts in those two cases differ materially from the facts of this case. In the Muckelrath case the lower court recited in its judgment "* * * and that the said defendant, after the execution of this bond, fled from the jurisdiction of this court and into the State of Missouri, and failed to answer after having thrice been called by the sheriff to answer the mandate of the bond and his appearance before this court."

In the Johnson case the bond, by express terms, required defendant to appear at the regular September 1939 term of that court. Apparently the defendant did not appear at that term. A divorce was granted the wife and custody of the children awarded her, and the decree required defendant to pay a specified monthly amount for the support of the children, beginning October 15, 1939. No action was taken on the bond. Defendant made no payment. On November 10, thereafter,

the wife filed a petition to have defendant adjudged in contempt for failure to make the payments. Defendant appeared and answered. He was adjudged in contempt but given thirty days within which to purge himself thereof. He failed to pay, and about thirty days thereafter the wife filed another petition, reciting the default and praying for an order of contempt. Citation issued for defendant but the sheriff could not find him. The defendant had fled to another state and did not appear.

Thereafter the wife filed a third petition, reciting the foregoing facts. Citation issued for and was served upon defendant. The sureties "surrendered" him to the court. Judgment was entered against the sureties "not in the full sum of the bond but for $74.20, the amount of the arreage up to the date of that decree."

In the case at bar the defendant had gone to his home. His sureties knew his whereabouts. The only process calling for personal service was upon the petition against him and his sureties. The sheriff was informed of his whereabouts and that he would be present at court. He was present—in fact arrived several days before the beginning of court. That is an entirely different factual situation from the Muckelrath and Johnson cases. However, both of those cases define the object and purpose of the writ of ne exeat. In the Muckelrath case this Court said, "The object of the writ of ne exeat is to detain the person of the defendant in order to compel him to perform the decree of the court in those cases where his departure would endanger the rights of the complainant or prevent the effectual enforcement of the order of the court." The Johnson case quoted that definition of the object and purpose of the writ. But that case contained this further pronouncement: "The office and object of the writ is to detain the person of the defendant within the state in order that he may remain amenable to the processes of the court during the pendency of the cause and may be compelled per-

sonally to perform the orders and decrees of the court, either interlocutory or final, where a personal performance thereof by him is essential to the effectual preservation and enforcement of the rights of the complainant in the case."

██ The conduct of appellant in this case met the objects and purposes of the bond. Judgment should not have been rendered on this bond under the circumstances. However, the bond is not discharged. It is still in force. Muckelrath v. Chezem, supra. Its condition was either to satisfy the decree of February 4, 1947, or keep appellant amenable to the processes of the court. Events and circumstances occurring since this case was tried in the lower court may call for and justify a judgment on this bond at another hearing.

Reversed and remanded.

*Lee, Kyle, Arrington* and *Gillespie, JJ.,* concur.