UNITED STATES of America,
Plaintiff,

v.

David ROBBINS et al., Defendants.

No. LR–64–C–100.

United States District Court
E. D. Arkansas, W. D.

Aug. 31, 1964.

Norman E. Bayles, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for United States.

Richard A. Williams, of Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., for defendants.

HENLEY, Chief Judge.

This is an action brought by the United States against David Robbins, Beatrice Robbins, his wife, and certain other defendants, pursuant to sections 7402 and 7403 of the Internal Revenue Code of 1954, to establish federal income tax liabilities and to foreclose asserted liens for such taxes. The Government's claims are based upon jeopardy assessments made by the Commissioner of Internal Revenue in June and July of the current year. It is alleged in the complaint that Mr. and Mrs. Robbins are indebted to the Government in the overall sum of $434,142.99, including fraud penalties and accrued interest; that the Government is entitled to judgment against them in that sum, to a foreclosure of its liens upon property and interests in property owned by Mr. Robbins, including his partnership interest in the University Plaza Shopping Center in the City of Little Rock, Arkansas, and to appropriate additional and incidental equitable relief.

The suit was commenced on July 25, 1964, and all of the defendants, except Mr. and Mrs. Robbins, were served with process in the normal course of business. Immediate service on Mr. and Mrs. Robbins could not be had since at the time of the institution of the suit they were physically within the Republic of Mexico, and did not leave that nation until August 12.

On or about August 18 Mr. and Mrs. Robbins came to Little Rock and representatives of the Internal Revenue Service learned of their presence here. Mr. and Mrs. Robbins, particularly the former, were placed under surveillance. On the afternoon of August 25 the Government filed herein an application for the issuance of a writ of *ne exeat republica* directed against Mr. Robbins. The substance of the application and of the affidavit filed in support thereof was that Robbins was in the course of liquidating all of his assets in the United States and of transferring those assets or their proceeds to Mexico, and that unless the writ should issue Robbins would leave the United States thus defeating or seriously jeopardizing the enforcement and collection of the Government's tax liens.

The application was presented to the Court *ex parte*, and the writ was issued directing the Marshal to require bail of Robbins in the sum of $200,000, and to commit Robbins to jail in default of such bail. The issuance of the writ in a case of this kind is expressly au-

thorized by section 7402(a) of the Internal Revenue Code.

While the writ which was issued was absolute and final in form, it was in fact a temporary writ. In this connection the Marshal was directed to produce Robbins before the Court at 11:00 A. M. on August 26 for a hearing, and also to bring Robbins before the Court during the evening of August 25 for an informal hearing or conference should Robbins desire the same.

Robbins was apprehended by deputy marshals at a Little Rock motel around 6:00 P.M. on the 25th and not surprisingly was unable to furnish immediately bail in the sum demanded. He contacted his attorneys and was brought before the Court about 8:30 P.M. As a result of a conference which the Court then held, Robbins was released for the night on his own recognizance with the understanding that he would not undertake to leave Little Rock, and that he would remain under the surveillance of Special Agents of the Intelligence Division of the federal Internal Revenue Service.

Prior to the hearing which was held on the 26th Robbins filed a motion to quash the writ on the ground that he did not intend to leave the country, that the affidavit supporting the application for the writ was insufficient, and that the hearing bond required of him was grossly excessive. The hearing was held in due course. The Government called as a witness Special Agent Richard L. Trattner of Los Angeles, California, and also examined Mr. Robbins under oath. Robbins called no witnesses.

To the extent that a judgment or decree of a court of equity must operate upon the person of a human being if it is to be effective, it is clear that such person can render such judgment or decree nugatory or ineffective if he can put himself beyond the reach of the court, as by departing from the jurisdiction of the court. It was to prevent such a frustration of their in personam jurisdiction that the courts of equity devised the common law writ of *ne exeat.*

Although it has been used infrequently, federal equity courts have had the power to issue the writ since the earliest days of the Republic.

Section 5 of the Act of March 2, 1793, 1 Stat., c. 22, p. 334, provided for the issuance of the writ "by any judge of the supreme court in cases where they might be granted by the supreme or a circuit court; (a) but no writ of ne exeat shall be granted unless a suit in equity be commenced, and satisfactory proof shall be made to the court or judge granting the same, that the defendant designs quickly to depart from the United States * * *." The power of the Supreme Court, as a court, and the power of the Circuit Courts, as courts, to issue the writ are to be found in section 14 of the original Judiciary Act of 1789, Act of September 24, 1789, c. 20, 1 Stat. 81.

Section 717 of the Revised Statutes of the United States, which was brought forward into the Judicial Code of 1911 as section 261 thereof, 28 U.S.C.A. (1940 Ed. § 376), provided that the writ might be issued by a Supreme Court Justice in any case in which the Supreme Court might issue it, and that it might be issued by a district judge in any case in which the district court might issue it. The original limitations that the writ was to be issued only in a pending equity suit and only upon a showing of a design on the part of the defendant "quickly to depart" from the United States were retained.

The function of the writ was described by the Supreme Court of the United States in the following language in the case of D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208–209, 52 S.Ct. 322, 323–324, 76 L.Ed. 704:

"Speaking for the Supreme Court of Wisconsin in Davidor v. Rosenberg, 130 Wis. 22, 24, 109 N.W. 925, Mr. Justice Winslow described the writ of *ne exeat* as follows; 'At common law it was simply a writ to obtain equitable bail. It was issued by a court of equity on application of the complainant against the defend-

ant when it appeared that there was a debt positively due, certain in amount, or capable of being made certain, on an equitable demand not suable at law (except in cases of account and possibly some other cases of concurrent jurisdiction), and that the defendant was about to leave the jurisdiction, having conveyed away his property, or under other circumstances which would render any decree ineffectual. * * *

"The writ is a restraint upon the common right of movement from place to place within the United States and upon emigration. It has been abolished in some states and its use is largely regulated and restricted by statute in others. And section 261 of the Judicial Code strictly governs the granting of the writ in federal courts."

In Gooding v. Reid, Murdock & Co., 7 Cir., 177 F. 684, 686–687, the Court said:

"* * * The writ (of *ne exeat*) is one of right * * * and * * * is little more than an order to hold to equitable bail, the party generally getting rid of it by giving security to abide the event of the litigation. * * *

"In Enos v. Hunter, 4 Gilman (Ill.) 211, it was said:

" 'Where the relief sought could be effected by acting directly upon the person of the defendant, the court of chancery has never hesitated to entertain the bill where the defendant is found within its jurisdiction, whether the subject-matter of the controversy be within its control or not. Of this character are those cases where the courts have compelled specific performance of contracts for the conveyance of, or relating to land which is situated beyond its jurisdiction. And in such cases the court will compel a conveyance to be executed, in such manner and form as may be prescribed by the law of the country where the

land is situate. And if need be, in order to effect this, they will prevent the defendant from leaving the jurisdiction of the court, pendente lite, by a writ of ne exeat.'

* * * * * *

"In a note to Section 865, Gibson's Suits in Chancery (1907), it is said:

" 'It would seem that a ne exeat is a writ necessary for the purposes of justice when the defendant, by leaving the state, can defeat the power of the court to grant effectual relief, or evade the relief granted; especially when the relief consists in compelling the defendant (1) to execute to the complainant a deed for land, or other property, situate in another state, or * * * (4) to do some other act which the court could not effectually do by the direct and inherent operation of its own decree. The object of the writ is to enable the court to act upon the person of the defendant in such cases. * *' "

From the cases just cited it appears that at common law there were two requirements for the issuance of the writ: (1) a threatened departure of the defendant from the jurisdiction; and (2) a resulting defeat of the court's power to give effective in personam relief due to its loss of control over the defendant's person. Those two elements were incorporated into the federal statutes which have beeen mentioned as dealing with the writ in general, with the added restriction that the threatened departure is imminent.

Section 261 of the Judicial Code of 1911 was not carried forward into the Judicial Code of 1948, but present general authority of the federal courts to issue the writ in proper cases is to be found in the "all writs" section of the present Code, 28 U.S.C.A. § 1651, the issuance to be in conformity with the common law principles heretofore pointed out. Moore's Federal Practice, 2d Ed., ¶ 64.07(3), pp. 1528–1529.

■ While section 7402(a) of the Internal Revenue Code expressly authorizes

the district courts of the United States to issue the writ of *ne exeat republica* in tax cases, it does not spell out the terms and conditions on and under which the writ is to be issued in such cases. This very omission, however, makes it clear that the writ is to be issued in a tax case only in circumstances which would render the issuance proper in some other type of suit in equity.

From the standpoint of procedure, it is proper to issue a temporary or provisional writ upon an ex parte showing of probable cause, but when that course is followed, as it was in the instant case, the defendant is entitled to a full and speedy hearing, and a failure to accord such a hearing amounts to a denial of liberty without due process of law. Jacobsen v. Jacobsen, 75 U.S.App.D.C. 223, 126 F.2d 13. And, at the hearing the burden is upon the plaintiff to establish that the writ should be continued in force. Ibid.

At the commencement of the hearing in the instant case the Court announced that the burden was upon the Government to sustain the writ, and counsel for the Government concurred in that view. In the Court's estimation the Government has failed to discharge its burden, and the writ must be vacated.

1. While Mr. Robbins admitted that he has visited in Mexico from time to time since December 1962, and while he admitted that he went to that country about July 5, 1964, and remained there until August 12, it does not appear from the evidence that he has any permanent or semi-permanent residence there, or that his sojourns south of the border have been for the purpose of tax evasion or to evade the jurisdiction or process of the courts of the United States. With reference to his Mexican visit during the present summer, he testified that such visit was for reasons of health, he having been seized with a severe attack of rheumatoid arthritis while on a business trip to Little Rock which caused him to go to Mexico to recuperate. He testified that his home is in Encino, Califor-

nia, and indeed, the Government's complaint so alleges. As to his future intentions, Mr. Robbins testified that he intends to stay in this country, and that he intends particularly to actively contest the Government's tax claims to the end of the litigation.

Although the Court is not required to accept Mr. Robbins's explanations of his past visits to Mexico or his statements of future intentions at face value, the Government has not produced evidence, including hearsay evidence, direct or circumstantial which would impel the Court at this stage to disbelieve Robbins on the point now under discussion. And in the Court's view the evidence fails to establish any probability that Robbins is about to leave the United States for Mexico or any other foreign country either permanently or for any substantial period of time.

2. But, even if it be assumed that Robbins is about to leave the country, the Court is not able to find from the evidence that such departure on his part would substantially prejudice the Government in the collection of its taxes, penalties and interest, assuming that the Government's claims are just. There is no substantial evidence that Robbins has been transferring assets or the proceeds of assets from the United States to Mexico for the purpose of escaping the claims of the Government, and he denies that he has done so. The bulk of his property, including his interest in the University Plaza Shopping Center in Little Rock, is in the United States, is subject to the jurisdiction of United States courts, and is also subject to the Government's tax liens, notices of which have now been fully filed.

It is true that the evidence discloses that prior to the Government's jeopardy assessments a California corporation controlled by Robbins conveyed certain California real estate to a citizen of Mexico. But, the lands conveyed have not been moved to Mexico, and they are still subject to the jurisdiction of United States courts. If the conveyance to the Mexican purchaser was fraudulent, it can be set

aside by means of an appropriate action in this country.

It is also true that prior to the assessments another corporation controlled by Robbins sold a 95 foot yacht to one Kohan for a price of about $40,000, and that this yacht was taken out of American registry, was ultimately transferred to the same Mexican citizen who bought the California land, and is now anchored principally in Mexican waters. But, in view of the size of the Government's claims, and in view of the age and value of the vessel the Court does not consider that it is really material from the standpoint of the Government whether the yacht is or is not available for the satisfaction of the alleged tax liabilities of Robbins.

An order vacating the writ and releasing Robbins from liability on his personal recognizance will be entered.