NIXON, Appellant, v. NIXON, Respondent.

*No. 310.    Argued May 9, 1968.—Decided June 4, 1968.*
(Also reported in 158 N. W. 2d 919.)

For the appellant there was a brief and oral argument by *Harry W. Theuerkauf* of Milwaukee.

For the respondent there was a brief and oral argument by *Marvin Resnick* of Milwaukee.

CONNOR T. HANSEN, J. Two issues are presented:

*1.* Whether sec. 268.14, Stats., is unconstitutional?

*2.* Whether the writ of *ne exeat* was improperly issued in the present case?

(1) At common law, *ne exeat* was the writ used to obtain equitable bail. It was issued by a court of equity against a defendant upon application of a complainant when it appeared that there was a debt positively due, certain in amount or capable of being made certain, on an equitable demand not suable at law, and that the defendant was about to leave the jurisdiction, having conveyed away his property, or under other circumstances which would render any decree ineffectual. *Davidor v. Rosenberg* (1906), 130 Wis. 22, 24, 109 N. W. 925; *Dean v. Smith* (1868), 23 Wis. 483, 486.

It is a provisional and ancillary remedy issued only by special order of the court. *State ex rel. Cazier v. Turner* (1911), 145 Wis. 484, 130 N. W. 510. The writ has not been abolished in this state and is specified in the following statutes:

"268.13 **Writ of ne exeat.** The court or a judge may grant the writ of ne exeat to prevent any defendant from going out of the state until he shall give security. It may be granted at any time before judgment."

"268.14 **Same; when granted.** No writ of ne exeat shall be granted unless it appears to the court or judge by the complaint or an affidavit that grounds exist therefor; and the court or judge granting such writ shall direct to be indorsed thereon the penalty of the bond and security to be given by the defendant."

"268.15 **Same; discharge of.** If the defendant shall satisfy the court or judge granting such writ that there is no reason for his restraint or shall give security for the performance of the judgment in the action the writ shall be discharged."

However, the writ of *ne exeat* was not created, nor are its functions defined by statute. The aforementioned sections recognize the common-law writ and make certain provisions relating to the issuance thereof, but do not pretend to enlarge its scope. As to the general functions of the writ and the grounds upon which it may issue, resort must be had to principles of the common law. *Davidor v. Rosenberg, supra,* at page 24. And even though the distinction between actions at law and suits in equity has been abolished, the writ of *ne exeat* can be issued only for equitable demands. *Bonesteel v. Bonesteel* (1871), 28 Wis. 245, 250. Granting or refusing the writ is within the jurisdiction of a circuit court by virtue of its general equity powers. *State ex rel. Cazier v. Turner, supra,* at page 485.

Respondent contends that the writ of *ne exeat* as set forth in the statutes, specifically sec. 268.14, is a violation of the due-process clause of the United States[1] and Wisconsin[2] Constitutions.

---

[1] "ARTICLE XIV. SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[2] "ARTICLE I. **Equality; inherent rights.** SECTION 1. All men are born equally free and independent, and have certain inherent

Such contention is based on the allegation that sec. 268.14, Stats., is so inherently vague as to allow the writ to be utilized as a tool of harassment rather than as was intended by the principles of common law. In support of this contention, respondent cites this court's statement in *State Bank of Drummond v. Nuesse* (1961), 13 Wis. 2d 74, 82, 83, 108 N. W. 2d 283, to the effect that the purpose of the constitutional provision guaranteeing due process and equal protection of the law is to prevent *arbitrary* deprivation of life, liberty or property and to require equal protection and security for all under like circumstances in enjoyment of their personal and civil rights.

The only prior constitutional attack brought against the validity of the writ of *ne exeat* was unsuccessful. *Dean v. Smith, supra,* at page 486, determined that the writ was not "imprisonment for debt" within the intent and spirit of art. I, sec. 16 of the Wisconsin Constitution.[3]

As has been noted, the writ has its origins in common law. *See* 3 Story, *Equity Jurisprudence* (14th ed. 1918), pp. 506–509, secs. 1910–1915; Thompson, *Provisional Remedies* (1867), ch. VI, pp. 568, 569. As such it has been incorporated by art. XIV, sec. 13 of the Wisconsin Constitution, which provides as follows;

rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

Art. I, sec. 1 of the Wisconsin Constitution is substantially equivalent to the due-process and equal-protection clauses of the fourteenth amendment to the United States Constitution. *State ex rel. Sonneborn v. Sylvester* (1965), 26 Wis. 2d 43, 49, 132 N. W. 2d 249; *State ex rel. La Follette v. Reuter* (1967), 36 Wis. 2d 96, 110, 153 N. W. 2d 49.

[3] "**Imprisonment for debt.** SECTION 16. No person shall be imprisoned for debt arising out of or founded on a contract, expressed or implied."

"**Common law continued in force.** SECTION 13. Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

Thus, it seems that any elimination of said remedy should be accomplished through legislative processes.

*Bonesteel v. Bonesteel, supra,* at page 250, recognized that the statutes do not prescribe the grounds on which the writ should issue and found that resort should then be had to established law. *Davidor v. Rosenberg, supra,* at page 25 establishes the principle that grounds for issuance of the writ are the grounds sufficient under the principle of common law.

The court possesses inherent power to issue or deny the writ. In the instant case, the writ was issued after an *ex parte* hearing, and upon the verified complaint and affidavit of the plaintiff.[4] That same day, defendant was brought before the court for hearing. It cannot be presumed that every decision based upon this procedure will constitute an arbitrary abuse of discretion, nor do we in any way intend to indicate that such was the situation in the case now under consideration.

In view of the extraordinary nature of the writ of *ne exeat,* we here determine that the issuance thereof, under the statutory procedure followed in this case, was not unconstitutional.

(2) Ultimately, and after a hearing at which both parties were represented by counsel, the trial court entered an order determining that the writ had been improperly issued and further ordered that the $5,000 security deposited by the defendant be returned to him.

It may be stated as a general rule that the writ of *ne exeat* will not be issued except in cases of equitable debts or claims; however, it is a well-recognized excep-

---

[4] A writ issued without affidavit has been held absolutely void. *Bonesteel v. Bonesteel, supra,* at page 251.

tion to the rule that *ne exeat* will issue to prevent a decree for alimony from becoming ineffective. *In re Grbic* (1919), 170 Wis. 201, 174 N. W. 546, 8 A. L. R. 325, 327; 3 Story, *Equity Jurisprudence, supra,* pp. 510, 511; Thompson, *Provisional Remedies, supra,* pp. 568, 571; 27A C. J. S., *Divorce,* p. 350, sec. 101.

It is recognized that *ne exeat* is an extraordinary writ and that because it is a remedy of great severity, it carries with it extraordinary judicial responsibilities. *Earles v. Earles* (1951), 343 Ill. App. 447, 99 N. E. 2d 359; *National Automobile & Casualty Ins. Co. v. Queck* (1965), 1 Ariz. App. 595, 405 Pac. 2d 905. However, it must also be recognized that the trial judge who is initially called upon to consider the issuance of the writ *ex parte* is confronted with a distinctly different situation than one called upon to finally determine the propriety of the issuance thereof.

We have considered the arguments and authorities advanced by both plaintiff-appellant and defendant-respondent in support of their respective positions. It is our determination that the trial judge correctly determined that the writ had been improperly issued. We shall refer to the reasons we believe to be most significant.

In *Harrison v. Graham* (C. C. Me. 1901), 110 Fed. 896, a federal court denied the writ and summarized:

"The writ of ne exeat, like all other special writs issued by the chancellor, when exercising his equitable jurisdiction, is an equitable one, and therefore it cannot be granted without some regard to a comparison of the relative mischiefs which the refusal or allowance of it would involve. We, of course, have no knowledge how much hardship, and, consequently, how much practical injustice, would be imposed on the respondent by an arrest on foreign soil, where he is sojourning temporarily for pleasure, if the alleged cause of action against him should prove to be baseless; while we can perceive that there is no substantial hardship to the complainant in-

volved in the denying of the writ now asked for, inas-
much as he has had ample opportunity of proceeding
against the respondent at Montreal, no more remote from
the residence of the complainant than is the habitat of
the United States circuit court for this district, and in-
asmuch, also, as we are well assured that his decree,
if he obtains one in this suit, will be respected by the
courts of the province of Quebec."

A comparison of the relative position of the parties in
the instant case must properly involve a consideration of
the alternative remedies available to the plaintiff. De-
fendant suggests attachment [5] and a reciprocal support
action (sec. 52.10, Stats.) as possible alternative remedies.
The record indicates that a reciprocal action had been
instituted. The plaintiff alleges on information and
belief that the defendant receives a monthly income
of upwards of $1,000 and is the owner of valuable
property in the state of New York. In view of the fact
that the divorce was consensually accomplished while
both parties were residents of New York and a reciprocal
action had been instituted in this particular case, legal
action in the forum of New York is more appropriate
than equitable action in Wisconsin.

The agreement between plaintiff's Wisconsin counsel
and defendant's New York counsel cannot be ignored.
There is no dispute as to the agreement; the dispute arises
as to its interpretation. The agreement was that plain-
tiff would not frustrate, obstruct or interfere with
defendant's visitations with respect to the child while
he was in Wisconsin. Counsel for the plaintiff contends
that such agreement did not grant the defendant im-
munity from service of process or other legal procedures
while he was in Wisconsin. Service of process is one
thing, however taking him into custody and forcing his

---

[5] It is acknowledged that respondent husband did have personal
property, *i.e.*, an automobile, with him in the state and therefore
the remedy of attachment might have been pursued.

appearance in court is something entirely different. It would seem that no reasonable interpretation of the understanding between the parties would contemplate such action.

The defendant was a nonresident, temporarily in Wisconsin and he owned no property in the state except the automobile he was apparently driving. Furthermore, there had been no judicial determination as to the arrearage due.

The case of *Earles v. Earles, supra,* is factually very similar to the case here under consideration. It supports the general proposition that a writ of *ne exeat* should not issue when an alternative remedy exists and there is no allegation that the defendant originally left the court's jurisdiction with the intention of evading payment or of defrauding the plaintiff.

We, therefore, determine that the trial court was correct in its determination that the writ was improperly issued and in ordering the $5,000 security deposit returned to the defendant.

*By the Court.*—Order affirmed.

ROBERT W. HANSEN, J., took no part.