Eva D. GREDONE, Appellant,

v.

Robert L. GREDONE, Appellee.

No. 9919.

District of Columbia Court of Appeals.

Submitted May 25, 1976.

Decided July 20, 1976.

---

Alfred G. Graf, Washington, D.C., for appellant.

No appearance was entered for appellee.

Before YEAGLEY and HARRIS, Associate Judges, and PAIR, Associate Judge, Retired.

HARRIS, Associate Judge:

Appellant challenges an order by the trial court returning to appellee's surety a money bond in the amount of $1,000. The bond had been deposited as against a writ of ne exeat which appellant had caused to be issued to secure appellee's appearance in a pending divorce suit. Following the entry of the divorce decree, the trial court concluded that the purpose of the writ had been satisfactorily fulfilled, and therefore ordered the release of the hostage funds. We affirm.

On December 21, 1973, appellant filed an action against appellee to obtain a divorce and compel enforcement of the couple's existing separation agreement.[1] She also filed a petition for a writ of ne exeat alleging that appellee was no longer a resident of the District of Columbia, that he had no business, property, or family ties in this jurisdiction, and that the likelihood of proper relief in the divorce action would be threatened by appellee's intention to abscond to "places unknown" unless the trial court "restrain[ed] [appellee] from such departure in the absence of the posting by or on behalf of [appellee] of an undertaking with this Court in a penal sum sufficient to assure the Court of [appellee's] appearance before this Court when and as may be required by this Court in the said action."

On the same day, the court issued a summons and a standard form writ of ne exeat, which read in pertinent part:

It appears to the Court that the defendant, Robert L. Gredone, is about to leave the District of Columbia and the jurisdiction of this Court and to go to parts unknown to the plaintiff, which would tend to the great injustice of the plaintiff.

The writ directed that appellee "not go or attempt to go beyond the jurisdiction of this Court without leave therefrom," and required that the marshall deliver appellee to the District of Columbia Jail in lieu of money security in the designated amount of $1,000. Following service of the writ

1. The agreement provided, *inter alia*, that appellee would pay $100 a week for the support of appellant and their minor child.

and appellee's consequent arrest on January 1, 1974, he was released the next day when his brother posted the necessary bond.

Appellee apparently left the jurisdiction to return to his residence in New Jersey, but returned on March 6, 1974, pursuant to appellant's notice to take depositions.[2] At that time he sought unsuccessfully to have the writ discharged. In an order dated March 6, 1974, the trial court denied appellee's motion, as well as appellant's motions for summary judgment and forfeiture of the money bond. The court concluded:

> [W]hile the Defendant has technically violated the writ, by returning apparently to the State of New Jersey, the forfeiture thereof does not appear appropriate at this time for the reason that Defendant has not indicated any intention to remain without the jurisdiction of this court during the pending [sic] of this case.

Appellee apparently again withdrew from the jurisdiction to his residence in New Jersey, but returned to the District of Columbia for the trial on January 13–14, 1975. The trial resulted in the entry of a decree of absolute divorce, incorporating the parties' separation agreement, and various money judgments in favor of appellant, including $10,666 in arrearages in the agreed weekly payments and $2,500 for attorneys' fees. On March 20, 1975, appellee again moved for a return of the ne exeat bond, which was followed on May 30 by pleadings by appellant opposing such a return and seeking to have appellee held in contempt and the bond declared forfeited. In an order dated June 19, 1975, the trial court granted the motion for release and directed that the $1,000 bond be returned to appellee's surety. The order contained the following conclusions:

> The Court is of the view a Ne Exeat bond is for the purpose of insuring the

defendant's appearance for trial. That result having been obtained, the bond serves no further purpose.

> While the bond technically forbade the defendant to leave the District of Columbia without leave of Court, no harm occurred to the plaintiff . . . .

> The Court finds it unrealistic to require the defendant to remain forever in the District and believes it implied in the final decree that the trial court knew the defendant lived in New Jersey and would be returning.

> A bond posted by a third party should not remain forever just because the defendant is out of state. Other remedies are available to the plaintiff.

Appellant contends that the court erred in returning the money bond. We disagree.

Ne exeat is in the nature of civil bail, the purpose of which is to prevent the frustration of a plaintiff's equitable claims by ensuring the continued physical presence of the defendant within the court's jurisdiction.

> The office and object of the writ is to detain the person of the defendant within the state in order that he may remain amenable to the processes of the court during the pendency of the cause and may be compelled personally to perform the orders and decrees of the court, either interlocutory or final, where a personal performance thereof by him is essential to the effectual preservation and enforcement of the rights of the complainant in the cause. [*Johnson v. Johnson,* 189 Miss. 561, 198 So. 308, 309 (1940).]

The writ is ancillary to the exercise of a court's equitable jurisdiction, and, as a general rule, will issue only for presently payable monetary claims of an equitable

---

2. While in New Jersey, appellee, who had obtained District of Columbia counsel, answered the complaint in the underlying action, and his pleadings were properly served and filed in the Superior Court.

nature.[3] A party seeking to obtain such a restraint upon the liberty of another must make a proper showing of:

(1) a threatened departure of the defendant from the jurisdiction;[4] and (2) a resulting defeat of the court's power to give effective in personam relief due to its loss of control over the defendant's person. [*United States v. Robbins*, 235 F.Supp. 353, 356 (E.D.Ark.1964). *See National Automobile and Casualty Ins. Co. v. Queck*, 1 Ariz.App. 595, 405 P.2d 905, 910 (1965); *see also Elkay Steel Co. v. Collins*, 392 Pa. 441, 141 A.2d 212, 216 (1958).]

■ It is well settled that the courts of the District of Columbia may issue writs of ne exeat in support of their jurisdiction over the various forms of marital actions. *See, e.g., Jacobsen v. Jacobsen*, 75 U.S. App.D.C. 223, 126 F.2d 13 (1942); *Murphy v. Paris*, 57 App.D.C. 19, 16 F.2d 515 (1926). This authority rests upon the "all writs" provision of 28 U.S.C. § 1651 (1970),[5] as well as having a basis in the courts' inherent equitable powers. *See Murphy v. Paris, supra. Cf. Griswold v. Hazard*, 141 U.S. 260, 11 S.Ct. 972, 35 L. Ed. 678 (1891); *United States v. Robbins, supra; Nixon v. Nixon*, 39 Wis.2d 391, 158 N.W.2d 919, 923 (1968); D.C.Code 1973,

§ 49–301. Moreover, the availability of the writ is consistent with the basic equitable philosophy underlying our statutes governing matters of divorce and support [*see* D.C.Code 1973, §§ 16–901 *et seq.*], and the need for a wide range of alternatives by which the courts may attempt to protect the rights and interests of family members. *See generally* 24 Am.Jur.2d *Divorce and Separation*, §§ 751–53 (1966). *Cf. Campbell v. Campbell*, D.C.App., 353 A.2d 276 (1976).

■ As an adjunct to the trial court's equitable jurisdiction, the issuance, terms, and implementation of writs of ne exeat lie within the court's sound discretion. *Cf. Coursen v. Coursen*, 105 N.J.Super. 420, 252 A.2d 738 (1969); *Elkay Steel Co. v. Collins, supra*, 141 A.2d at 218. The record demonstrates that the trial court contemplated that the device would be employed merely to ensure its continued in personam jurisdiction over appellee during the pendency of the divorce action. Despite appellee's absences from the District of Columbia, the trial court declined to find such violations of the writ as would warrant forfeiture of the bond. *Cf. Gibson v. State*, 220 Miss. 39, 70 So.2d 30 (1954). Since there is no indication that these absences prejudiced either the course of the litigation or appellant's interests

---

3. The writ itself is ancient in origin. *See, e. g., National Automobile and Casualty Ins. Co. v. Queck*, 1 Ariz.App. 595, 405 P.2d 905, 909–10 (1965); *Elkay Steel Co. v. Collins*, 392 Pa. 441, 141 A.2d 212, 215–16 (1958). *Cf. United States v. Robbins*, 235 F.Supp. 353 (E.D.Ark.1964).

Although the writ was firmly entrenched in the common law, many jurisdictions have abolished or replaced the device, while in others it has fallen to infrequent use, largely limited to domestic relations actions. *See* 57 Am.Jur.2d *Ne Exeat* § 1 (1971). *Cf.* 26 U.S.C. § 7402(a) (1970) (granting authority to the federal courts to employ the writ in aid of the enforcement of internal revenue statutes).

4. This prerequisite is often construed as requiring the showing of a threat of immediate departure by the defendant. *Cf. Judson v. Judson*, 8 F.R.D. 336 (D.D.C.1943).

5. 28 U.S.C. § 1651(a) provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

This statute was enacted to consolidate various previous provisions which had included specific grants of authority over writs of ne exeat to both the federal courts [*see* 28 U.S.C. § 376 (1940)] and those of the District of Columbia [*see* D.C.Code 1940, § 11–315]. *See* 62 Stat. 944, ch. 646 (Act of June 25, 1948). The superseded D.C.Code section had provided that the trial court could issue "writs of . . . ne exeat, and all other writs known in common law and equity practice that may be necessary to the effective exercise of its jurisdiction."

therein and the suit was completed routinely with the entry of judgments in her favor, there is support for the court's conclusion that the writ had fulfilled its intended purpose.

 It is appellant's apparent contention, however, that the writ should have been directed beyond the mere retention of in personam jurisdiction over appellee pending the outcome of the suit, toward the further objective of securing the proper satisfaction of her equitable claims (as embodied in the money judgments). There is some support for the notion that in proper circumstances the device of ne exeat may be used to secure performance or satisfaction of the plaintiff's equitable claims as well as the defendant's appearance in court. *See, e.g., Murphy v. Paris, supra; Cohen v. Cohen,* 319 Mass. 31, 64 N.E.2d 689 (1946). *See generally* 57 Am. Jur.2d *Ne Exeat* §§ 18–19 (1971). *Cf. D. Ginsberg & Sons v. Popkin,* 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704 (1932). Moreover, should such an objective be the intention of the issuing court, we perceive no reason why, in the event of forfeiture, the hostage funds might not be applied to the benefit of the aggrieved party. *See Coursen v. Coursen, supra; National Automobile and Casualty Ins. Co. v. Queck, supra,* 405 P.2d at 912. *Cf. Campbell v. Campbell, supra.* However, our review of the record convinces us that the trial court did not abuse its discretion in ordering the bond returned after the litigation had been completed.

 We find it significant that the court declined to declare a forfeiture of the bond. The absence of such a finding distinguishes this case from *Murphy v. Paris, supra,* and *Coursen v. Coursen, supra,* upon which appellant relies. Since

writs of ne exeat serve merely to aid the court in the effective exercise of its equitable jurisdiction, as long as the issuing court remains satisfied that the restrained party is conducting himself in accordance with its directives, the funds deposited as a guarantee of such behavior ordinarily would not be subject to the suggested disbursement. Moreover, absent a proper finding of forfeiture for breach of the terms of the writ, the application of the funds of a third party (*i.e.,* the surety, who was the defendant's brother) toward the satisfaction of the plaintiff's judgments would require a showing of extraordinary circumstances not present in the record before us. *Cf. Zantzinger v. Weightman,* 2 D.C. (2 Cranch) 478 (1824).

 We are mindful that because of their substantial impact upon an individual's liberty, writs of ne exeat are to be employed only upon the most careful consideration of the interests of all of the parties to the underlying action. Both the scope and duration of such restraints upon the defendant must not exceed those which are reasonably necessary to the protection of the plaintiff's equitable claims. *See Nixon v. Nixon, supra,* 158 N.W.2d at 923–25; *cf. Jacobsen v. Jacobsen, supra. See generally* 57 Am.Jur.2d *Ne Exeat* § 16 (1971). Consistent with such principles, the trial court observed that there existed alternative means whereby appellant might obtain satisfaction of her money judgments,[6] and concluded that once the litigation had been completed and the judgments entered in her favor there remained no justification for the continued retention of the hostage funds.[7] As the court's determinations are supported by the record, we conclude that the return of the bond to appellee's surety did not constitute error.

Affirmed.

---

6. Traditionally the doctrine of ne exeat has not been viewed as a remedy in and of itself. *See Judson v. Judson, supra,* at 337.

7. Because of the extraordinary nature of the writ, the plaintiff bears the burden of establishing the necessity of both its initial issuance and its continued application. *See, e. g., United States v. Shaheen,* 445 F.2d 6 (7th Cir. 1971) ; *Elkay Steel Co. v. Collins, supra,* 141 A.2d at 216.