# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __June 18, 2015_____

**NO. 32,958**

**UTTI ATHERTON, LAURA JARAMILLO,
JOHN DOE 1-99, and JANE DOE 1-99,**

Plaintiffs-Appellees,

and

**STATE OF NEW MEXICO, ex rel.,
HECTOR H. BALDERAS, Attorney General,**

Plaintiff-Appellee,

v.

**MICHAEL J. GOPIN, an unlicensed New
Mexico attorney d/b/a LAW OFFICES
OF MICHAEL J. GOPIN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
James T. Martin, District Judge**

Robert N. (Tito) Meyer
Las Cruces, NM

Kenneth L. Beal
Las Cruces, NM

for Appellees

Hector H. Balderas, Attorney General
Santa Fe, NM
Tonya Noonan Herring, Special Assistant Attorney General
Rebecca C. Branch, Special Assistant Attorney General
Ismael L. Camacho, Special Assistant Attorney General
Albuquerque, NM

for Appellee Attorney General

Caren I. Friedman
Santa Fe, NM

Gorence & Oliveros, P.C.
Robert J. Gorence
Albuquerque, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

{1}     After a ne exeat bond is set, may a district court exercise its discretion to increase the amount of the bond? This is a matter of first impression in New Mexico. To resolve the issue, we examine the parameters of the writ of ne exeat, a little-used writ with origins dating as far back as the tenth century. Concluding that the district court did not abuse its discretion, we affirm.

**BACKGROUND**

{2}     The present matter stems from a 2011 judgment against Michael J. Gopin (Defendant) for violations of the New Mexico Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2009). "The judgment included treble damage awards in favor of twelve individual [p]laintiffs totaling $216,222.57, $757,358.56 in favor of the New Mexico Attorney General as restitution for 110 consumers, and $1,570,000 in civil penalties in favor of the Attorney General." *Atherton v. Gopin* (*Atherton I*), 2015-NMCA-003, ¶ 2, 340 P.3d 630, *cert. granted*, 2014-NMCERT-012, 344 P.3d 988. The details leading to the judgment are set out in this Court's Opinion in the appeal of that judgment. *Id.* ¶¶ 5-17. Because those details are not critical to the issue before us on this appeal, we do not repeat them here. It suffices to say that after entry of summary judgment in *Atherton I*, the district

court issued a writ of ne exeat, the subsequent alteration of which is the only issue before us in this appeal.

{3} The Attorney General filed an application for writ of ne exeat on January 3, 2012, less than a month after entry of the judgment. The application requested the district court to enter a writ "without advance notice to Defendant," barring Defendant from leaving the State of New Mexico, removing any assets from New Mexico, and "hiding, spending, or disposing of his personal assets, or the assets of the business, pending further order of [the district c]ourt." A hearing was held on January 5, 2012. At the hearing, the district court stated that "the Attorney General has established good cause to believe that [Defendant] may be about to remove assets from the jurisdiction of the [district] court." It ordered Defendant to post a ne exeat bond in the amount of $100,000, which was based on the sale price of a building Defendant owned in New Mexico (the Solano property).

{4} Defendant moved for reconsideration of the ne exeat bond order, but failed to appear at the hearing on the motion. Following the hearing, the district court entered findings of fact. Specifically, it found that (1) "[t]he evidence before the [c]ourt establishes that Defendant has engaged in . . . complex financial transaction[s] for the purpose of preventing collection of this judgment[;]" (2) "Defendant has dissipated assets during the pendency of this case, including the sale of [the Solano] property

2

located in Las Cruces, New Mexico[;]" and (3) "[a]t the January 5, 2012[,] hearing, Defendant testified under oath that he would attend all future hearings in this case and would not flee the jurisdiction." It also found that "[m]ore than [thirty] days has passed since the [c]ourt ordered [D]efendant to post a bond with the [c]ourt." Based on these and other findings, the district court concluded that "a bond in the amount of $500,000, which represents approximately 25% of the total judgment entered against [D]efendant, is appropriate to prevent further dissipation of assets within the jurisdiction of the [c]ourt and to secure [D]efendant's appearance at all future proceedings."

{5} On March 20, 2012, the district court issued a temporary restraining order enjoining Defendant from, among other things, removing any assets owned by him personally or owned by the law offices of Michael J. Gopin from New Mexico. Defendant then failed to appear for a March 27, 2012, hearing and the district court issued an order to show cause why he should not be held in contempt for failure to appear. The show cause hearing was scheduled for May 16, 2012. Meanwhile, the ne exeat bond order for a bond of $500,000 was issued on April 24, 2012. Defendant failed to post the bond and failed to appear at the May 16, 2012, hearing. The district court then entered a bench warrant for his arrest and increased the bond to $1,000,000 ($500,000 for the ne exeat bond and $500,000 for failure to appear at the May 16,

2012, hearing). Defendant was arrested and put in jail. Pursuant to Defendant's emergency motion, the district court quashed the bench warrant and reduced the ne exeat bond to $250,000. Defendant paid that sum into the court registry.

{6}     Defendant does not appeal any of the foregoing rulings or orders. Rather, Defendant only appeals an order increasing the amount of the ne exeat bond. This order followed a February 27, 2013, motion for increase by the Attorney General in which the Attorney General alleged that Defendant "continue[d] to dissipate his assets from New Mexico." Defendant filed responsive pleadings, and a hearing on the motion was held on April 30, 2013. The district court found that "Defendant's [r]eal [e]state [c]ontract [for sale of the Solano property] is an asset that Defendant continues to dissipate from the [S]tate of New Mexico" and ordered Defendant to post an additional $120,000 as part of the ne exeat bond.

**DISCUSSION**

**The Writ of Ne Exeat**

{7}     Section 57-12-17 of the UPA permits the attorney general to move for a writ of ne exeat "[w]henever the attorney general has reasonable belief that any . . . person [violating the UPA] is about to remove himself from the [S]tate of New Mexico, or is about to remove his property or assets from the [S]tate of New Mexico." Using the writ, "the court may forbid any such person from leaving the [S]tate of New Mexico,

4

or removing his property or assets from the [S]tate of New Mexico until a determination of the issues [alleged under the UPA] has been made." *Id.* There are no cases in New Mexico construing the ne exeat provisions in the UPA. *See* §§ 57-12-17 to -20. Thus the questions presented here are matters of first impression.

{8}    Although the parties appear to agree that the district court's authority to issue the writ arises from the UPA, "the writ of ne exeat was not created, nor are its functions defined by statute." *Nixon v. Nixon*, 158 N.W.2d 919, 922 (Wis. 1968). Hence, "[a]s to the general functions of the writ and the grounds upon which it may issue, resort must be had to principles of the common law." *Id.*

{9}    The writ of ne exeat has ancient origins. "The forerunner of this writ in ancient common law appears to have been a writ *de securitatem invenienda* which was designed to prevent members of the clergy in England from departing the realm to visit the Papal See. It was thus limited in use to ecclesiastics only." *Nat'l Auto. & Cas. Ins. Co. v. Queck*, 405 P.2d 905, 909 (Ariz. Ct. App. 1965). "Sometime between the reign of John (1199-1216), and Edward I (1272-1307), . . . the writ of *ne exeat regno* was first used as a high prerogative writ . . . applied to subjects and foreigners alike, to prevent them from leaving the kingdom." *Id.* By the seventeenth century, use of the writ of ne exeat had evolved to encompass enforcement of private rights. *Id.* at 910; *see also Beveridge v. Beveridge*, 507 A.2d 502, 504 (Conn. App. Ct. 1986).

{10} As used today, "[t]he writ of *ne exeat* is an equitable remedy in the nature of bail at common law. It is directed to the sheriff, commanding him to commit the party to prison until he gives security not to leave the jurisdiction without permission of the court." *The Writ of Ne Exeat*, 29 Harv. L. Rev. 206, 206 (1915) (footnotes omitted). "The purposes of the writ are to insure compliance with orders and decrees of court and to enable the court to retain jurisdiction of the party against whom it is issued." 65 C.J.S. *Ne Exeat* § 2 (2015); *Tedards v. Auty*, 557 A.2d 1030, 1034 (N.J. Super. Ct. App. Div. 1989) ("The purpose of a writ of *ne exeat* is to compel a defendant's physical appearance in court when required."). There are "two requirements for the issuance of the writ: (1) a threatened departure of the defendant [or removal of property] from the jurisdiction; and (2) a resulting defeat of the court's power to give effective in personam relief due to its loss of control over the defendant's person [or property]." *United States v. Robbins*, 235 F. Supp. 353, 356 (E.D. Ark. 1964); *see* § 57-12-17; 57 Am. Jur. 2d *Ne Exeat* § 9 (2015) ("[W]here the removal of property would defeat the purpose of a ne exeat writ, the order in the writ may detain property, as well as the person.").

{11} These requirements circumscribe the use of a writ of ne exeat: "In the absence of [a threat to abscond], the writ may not be used as a form[] of coercing payment of a debt, no matter how just, nor as a form[] of punishment, no matter how deserved."

6

*Tedards*, 557 A.2d at 1034. Moreover, because "[t]he writ of ne exeat operates in restraint of personal liberty[, i]t is to be granted with caution [and] continued in force with caution." *Cohen v. Cohen*, 64 N.E.2d 689, 693 (Mass. 1946); *Elkay Steel Co. v. Collins*, 141 A.2d 212, 218 (Pa. 1958) (stating that "use and employment [of the writ] must be carefully circumscribed within appropriate limits and its issuance exercised with great caution and only in such instances where it clearly and unmistakably applies"). "As an adjunct to the trial court's equitable jurisdiction, the issuance, terms, and implementation of writs of ne exeat lie within the court's sound discretion." *Gredone v. Gredone*, 361 A.2d 176, 180 (D.C. 1976).

{12}     Once the purpose of the writ and conditions of the bond have been fulfilled, the writ and the bond are discharged. *May v. May*, 91 S.E. 687, 688 (Ga. 1917) (stating that when the defendant did all that he was "obligated to do in his bond; and, the bond having discharged all the offices for which it was intended, [the bond] should have been canceled as functus officio, and the sureties discharged"); 27A C.J.S. *Divorce* § 198 (2015) ("Upon the fulfillment of the purpose of the writ and the conditions of the bond, . . . the writ and the bond are functus officio." (footnotes omitted)); *Black's Law Dictionary* 787 (10th ed. 2014) (defining "*functus officio*" as "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished"). On the other hand, failure to comply

with the conditions of a ne exeat bond results in forfeiture of the bond. *See* 27A C.J.S. *Divorce* § 198 ("A failure to meet the conditions of a ne exeat bond forfeit[s] the entire bond."); *Queck*, 405 P.2d at 912 (stating that where the defendant failed to stay within the jurisdiction, the bond was forfeited). As with the issuance of a writ of ne exeat, "the matter of discharge . . . on a [n]e exeat bond rests in the sound discretion of the court." *Coursen v. Coursen*, 252 A.2d 738, 739 (N.J. Super. Ct. App. Div. 1969). **Defendant's Arguments**

{13} Defendant makes four arguments. First, he argues that the district court lacked jurisdiction to order an increase in the ne exeat bond. Second, he maintains that the ne exeat bond violated the UPA. Third, Defendant contends that there was insufficient evidence to support increasing the bond. Finally, he argues that he was deprived of his right to due process of law when the district court ordered the ne exeat bond increased. We address these arguments in turn.

**1. Jurisdiction to Increase the Bond**

{14} Defendant argues first that the district court did not have jurisdiction to increase the amount of the bond because an appeal was pending in the underlying matter (*Atherton I*). We review such jurisdictional questions de novo. *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300. Defendant relies on the general rule "that the filing of a proper notice of appeal divests the district

8

court of jurisdiction and transfers jurisdiction to the appellate court." *Murken v. Solv-Ex Corp.*, 2006-NMCA-064, ¶ 9, 139 N.M. 625, 136 P.3d 1035. Recognizing that "the rule is not absolute, as it does not prevent the district court from taking actions to carry out or enforce the judgment[,]" *id.* (internal quotation marks and citation omitted), Defendant argues that "increasing the amount of the ne exeat bond by $120,000 does not enable the [district] court to carry out or enforce the judgment." Rather, he argues, the increase in the bond amount was a modification of the judgment, an act not within the district court's jurisdiction once the judgment is appealed. *See* Hall v. Hall, 1992-NMCA-097, ¶ 38, 114 N.M. 378, 838 P.2d 995 ("As a general rule, while a court has jurisdiction after the judgment to enforce that judgment, it lacks jurisdiction to modify the judgment except under limited circumstances.").

{15} Defendant's argument ignores the basic nature of the writ. A ne exeat bond order "is not in itself a remedy. It is a means to effectuate a remedy by keeping a party within the jurisdiction of the court." 57 Am. Jur. 2d *Ne Exeat* § 2 (2015). The writ is not part of the judgment. *Id.* It follows that modification of a bond amount is not akin to modification of a judgment.

{16} To the extent that Defendant argues that the ne exeat bond order is not collateral to the underlying judgment because "[t]here can be no issuance of a writ of

9

ne exeat if there is no violation of the [UPA,]" we disagree. Issuance of the writ does not depend on an actual violation of the UPA. Section 57-12-17 permits the issuance of a writ of ne exeat when the "attorney general has *reasonable belief* that any person is using or is about to use any method, act or practice which is declared by the [UPA] to be unlawful" and "*reasonable belief* that any such person is about to remove himself from the [S]tate of New Mexico, or is about to remove his property or assets from the [S]tate of New Mexico." *Id.* (emphasis added). This language indicates that the Legislature contemplated issuance of the writ even before entry of judgment on the UPA claims. The writ is thus an aid to effecting a remedy for UPA violations, but it is not itself a remedy. It is necessarily collateral to any UPA judgment that may be entered.

{17}     Finally, Defendant argues that the district court lost jurisdiction to enter the writ once judgment was entered because Section 57-12-17 provides for issuance of the writ "until a determination of the issues has been made." We do not agree. Given the purposes of the writ of ne exeat, it does not make sense to construe the statute as depriving the district court of jurisdiction over this collateral matter while a judgment is on appeal. Instead, we interpret this language to permit continuation of the writ until the issues are completely determined, meaning that judgment is either paid or dismissed. *See Tafoya v. Garcia*, 1871-NMSC-003, ¶ 5, 1 N.M. 480 ("The spirit, as

10

well as the letter of the statute, must be respected; and where the whole context of a law demonstrates a particular intent in the [L]egislature to effect a certain object, some degree of implication may be called in to aid that intent[.]" (internal quotation marks and citation omitted)). We conclude that the modification of the ne exeat bond order here was within the district court's jurisdiction to enforce its judgment in *Atherton I* notwithstanding the appeal of that judgment.

**2.      The Bond Conforms to the Statute**

{18}      Defendant next argues that issuance of a bond order conditioned on refraining from dissipating assets is contrary to the terms of the UPA. He distinguishes a writ of ne exeat from a ne exeat bond and argues that whereas Section 57-12-17 permits entry of a writ to prevent dissipation, Section 57-12-18 limits ne exeat bonds to those conditioned on the defendant's appearance in court. Section 57-12-18 states that "[t]he court may require any . . . person [alleged to violate the UPA] to post a ne exeat bond conditioned on such persons [person's] appearance at all hearings on the matter at issue." (Third alteration in original). Defendant's argument presents a question of statutory construction which we review de novo. *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69.

{19}      "In construing a statute, our charge is to determine and give effect to the Legislature's intent." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-

NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. Where a statute touches an issue in the common law, we interpret the statute's language in the context of that law. *Sims v. Sims*, 1996-NMSC-078, ¶ 23, 122 N.M. 618, 930 P.2d 153. We assume that the Legislature was "informed about the existing common law before the statute was enacted," *id.* ¶ 24, and interpret a statute "as supplanting the common law only if there is an explicit indication that the [L]egislature so intended." *Id.* ¶ 22. "This rule of construction is a recognition that any law is passed against the background of all the law in effect at the time. If no aspect of the background of law is clearly abrogated, it is presumed to be consistent with, if not incorporated into, new legislation." *Id.* ¶ 24.

{20}    As discussed above, at common law, a bond is an inherent part of a writ of ne exeat. Put another way, the writ itself contemplates—if not requires—a bond. 57 Am. Jur. 2d *Ne Exeat* § 2 ("A writ of ne exeat may be issued to secure to the plaintiff the presence of the defendant within the limits of the court's jurisdiction until the satisfaction of the plaintiff's equitable claim or *until a bond, or equitable bail, is given for that purpose*." (emphasis added) (footnote omitted)). Defendant's distinction between a writ of ne exeat and a ne exeat bond is, therefore, specious. In addition, "[h]istorically, where the removal of property would defeat the purpose of a ne exeat writ, the order in the writ may detain property, as well as the person." 57

Am. Jur. 2d *Ne Exeat* § 9. Hence, at common law, a ne exeat writ, including a bond, may be conditioned on preservation of assets. Although Section 57-12-18 provides for an instance in which a bond may be required, it does not prohibit bonds related to assets or property. Therefore, since the statute is silent as to these bonds, the statute does not abrogate the common law. Issuance of the bond order conditioned on preservation of assets was not contrary to the UPA.

**3.    Sufficiency of the Evidence**

{21}    Next, Defendant argues that the district court's decision to increase the bond amount was not supported by sufficient evidence. He alleges three ways in which the district court's order was error. First, he argues that because the district court's first ne exeat bond order of $100,000 was based on the value of the Solano property, the subsequent increase of the bond order based on a real estate contract related to the same property was improper. Second, he contends that there was no evidence that he had an ownership interest in the Solano property. Third, he maintains that there was no evidence that he had or would dissipate assets in New Mexico. We address these arguments in turn.

{22}    The fundamental premise of Defendant's first argument is that the amount of the bond order must be based on the value of the property he is allegedly dissipating and that, therefore, the same property cannot serve twice as the basis for a bond order.

13

It appears that the parties and the district court shared this understanding of the limits on the amount of a ne exeat bond. But the parties do not cite and we have found no authority supporting this premise. Rather, some authorities state that the amount of a ne exeat bond is related to the amount of the plaintiff's interests or the judgment. *See, e.g.*, Polly J. Price, *Full Faith & Credit & the Equity Conflict*, 84 Va. L. Rev. 747, 801 (1998) ("The writ was commonly directed to a sheriff to require the defendant to post sufficient security that he would not depart the territory without leave of the court, in an amount sufficient to satisfy the plaintiff's interest, or be imprisoned."); 57 Am. Jur. 2d *Ne Exeat* § 26 (2015) ("The sum assessed must be sufficient to cover not only the existing debt but also costs and a reasonable amount of future interest having regard to the probable duration of the suit."); *McNamara v. Dwyer*, 7 Paige Ch. 239, 245 (N.Y. Ch. 1838) (holding that "[t]he amount in which the defendant is held to bail upon the [n]e exeat should therefore be reduced to $9000; as that will be sufficient to cover what will probably be found due to the complainants, with interest and costs"). Other authorities appear to endorse a bond based on an assessment of the amount necessary to provide the defendant a material incentive to remain within the jurisdiction and/or refrain from dissipating assets without regard to the amount at issue in the underlying action. *See, e.g.*, *Elkay Steel Co.*, 141 A.2d at 214 n.3 (ordering bond of $25,000 each from two defendants where

14

the amount in issue was $60,165); *Gredone*, 361 A.2d at 179 (ordering bond of $1,000 where trial ultimately resulted in money judgments against the defendant totaling over $13,000). Thus, to the extent that Defendant argues that the increase of the bond was improper because it was based on the same property used as a basis for the initial bond, we disagree because the amount of the bond need not necessarily be tied to the value of the property.

{23} Defendant directs us to *Siravo v. Siravo*, 670 So. 2d 983, 985 (Fla. Dist. Ct. App. 1996), in which the court stated that a writ is not "a substitute for a contempt, injunction, or other enforcement order, where its purpose is not to prevent a party from fleeing or removing assets but, rather, to force the party to post security, or produce assets, that would be used to satisfy a judgment." But in that case, the court also expressly stated that a ne exeat bond is "a valuable resource in the arsenal of remedies available to a trial court in order to secure alimony and support." *Id.* The *Siravo* court found that a ne exeat bond was improper in that case because there was no evidence of the defendant's intent to flee the jurisdiction and other remedies, such as contempt, were available to enforce the court's judgment. *Id.* We interpret the court's statements to indicate that a ne exeat bond is inappropriate where its *only* purpose is to secure assets, rather than to prevent the defendant from fleeing or dissipating assets. We decline Defendant's invitation to interpret the holding in

15

*Siravo* as a blanket prohibition against a ne exeat bond as used in this case.

{24} In any case, the authorities agree on two points related to the bond: that the amount of the bond is within the district court's discretion and that the bond amount may not be excessive or oppressive. *Gredone*, 361 A.2d at 180 ("As an adjunct to the trial court's equitable jurisdiction, the issuance, terms, and implementation of writs of ne exeat lie within the court's sound discretion."); *State v. Browne*, 142 So. 247, 250 (Fla. 1932) ("Excessive or unreasonable bail should never be required; as the writ is a purely civil writ, it should not be allowed to be used oppressively or in unnecessary violation of the defendant's constitutional right to personal freedom to go and come as he may please."). The total bond amount including the increase was $370,000, well under the total amount of the judgment of approximately $2.5 million. Further, Defendant does not argue on appeal that the bond amount is excessive or oppressive. We discern no abuse of discretion in the bond amount.

{25} This conclusion leads us to Defendant's second and third arguments having to do with whether there was substantial evidence that he has an ownership interest in the Solano property or that he was dissipating assets from New Mexico. The district court abuses its discretion if it enters findings of fact that are not supported by substantial evidence. *Perkins v. Dep't of Human Servs.*, 1987-NMCA-148, ¶ 19, 106 N.M. 651, 748 P.2d 24 ("An abuse of discretion is established if the . . . lower court

has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."). When reviewing for substantial evidence, we adhere to the following principles:

> If substantial evidence supports a trial court's conclusion it will not be disturbed on appeal. Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion. Evidence is substantial even if it barely tips the scales in favor of the party bearing the burden of proof.

*Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 7, 111 N.M. 137, 802 P.2d 1283 (citations omitted).

{26} In addition, "in deciding whether the finding has substantial support, the court must view evidence in the light most favorable to support the finding[.]" *Duke City Lumber Co. v. N.M. Envtl. Improvement Bd.*, 1984-NMSC-042, ¶ 12, 101 N.M. 291, 681 P.2d 717. We do not review "any evidence unfavorable to the finding" and do "not weigh conflicting evidence or determine credibility of witnesses." *Id.*

{27} Defendant does not dispute that he owned the Solano property in December, 2011 and that he entered into a real estate contract for sale of the property and transferred his interest in the property to his wife on December 9, 2011, just days before judgment was entered in *Atherton I*. The Attorney General attached a copy of the real estate contract to its motion to increase the bond and copies of a "memorandum of real estate contract" and the transfer document were entered into

evidence at the hearing on the motion to increase.

{28}     As we understand it, Defendant's argument is that he could not be dissipating funds from the sale of the Solano property because he does not *currently* have an interest in it. This argument is unavailing. Based on the undisputed facts, viewed in the light most favorable to the district court's decision, we conclude that the district court could reasonably find that the sale and transfer of the property themselves constituted dissipation of that asset. Since the real estate contract indicated that payments from the sale were continuing at the time of the hearing on the motion to increase, the district court's finding that "assets are continuing to be dissipated from the jurisdiction of this [c]ourt" is also supported by the evidence.

{29}     Defendant also appears to rely on the fact that the property was sold before entry of judgment in *Atherton I* as evidence that the ne exeat order and bond were improper. But under Section 57-12-17, entry of a judgment is not a prerequisite to issuance of the writ. Hence, it was not an abuse of discretion for the district court to consider the sale of the property even though it occurred before the entry of the judgment and before the application for writ of ne exeat.[1]

---

[1]Defendant directs our attention to an affidavit filed with this Court, which is not part of the record proper. We do not consider evidence not reviewed in the first instance by the district court. *State v. Romero*, 1975-NMCA-017, ¶ 2, 87 N.M. 279, 532 P.2d 208 ("Matters outside the record present no issue for review."). We also decline to consider documents cited by the Attorney General that were not part of the record below. *See id.*

18

## 4.  Due Process

{30}  Finally, Defendant makes a brief argument that he was denied the due process of law accorded him by the New Mexico and federal constitutions because he had no opportunity to be heard before the ne exeat bond was increased. *See* U.S. Const. amend. V; N.M. Const. art. II, § 18. Defendant relies on *Jacobsen v. Jacobsen*, 126 F.2d 13, 14-15 (D.C. Cir. 1942), for the proposition that "since he had denied the allegations of the [motion for increase], he was further entitled to a full hearing [including] a full opportunity to introduce oral testimony." There, the court held that where "[the defendant] was given no such opportunity, continuing the writ [ne exeat] in force deprived him of his liberty without due process of law, in violation of the Fifth Amendment." *Id.* at 15. Due process is provided when a defendant has "timely notice . . . ; a reasonable opportunity to [be heard]; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence . . . ; representation by counsel . . . ; and a hearing before an impartial decisionmaker." *In re Pamela A.G.*, 2006-NMSC-019, ¶ 12, 139 N.M. 459, 134 P.3d 746 (internal quotation marks and citation omitted).

{31}  Defendant acknowledges that this argument was not raised in the district court and, therefore, was not preserved for appeal. Generally, "[d]ue process claims will not be addressed when raised for the first time on appeal." *State v. Martinez*, 2007-

NMCA-160, ¶ 4, 143 N.M. 96, 173 P.3d 18. Defendant argues that nevertheless we should review this issue because "it involves the public interest and the fundamental right[s] of Defendant." *See* Rule 12-216(B) NMRA. But, other than asserting that "a writ of ne exeat is an infringement on a party's liberty interest[,]" Defendant provides no reason why this particular due process challenge should be exempt from the general preservation rule. Similarly, although he asserts that "this case implicates the public interest because enforcement of the [UPA] is entrusted to the Attorney General on behalf of the people of New Mexico," he gives no reason why this fact distinguishes this matter from any other pursued by a state agency. Thus, we need not address this argument any further. *Cf. Doe v. State*, 1975-NMCA-108, ¶ 18, 88 N.M. 347, 540 P.2d 827 (declining to address the respondents' arguments because they did not provide "some showing on appeal of the suggested fundamental or jurisdictional nature of the error"). However, to foreclose any further argument on the issue, we will address it on its merits.

{32} Defendant's assertion that he was provided no opportunity to be heard on the motion for increase is flatly contradicted by the record, as is his contention that the Attorney General presented "nothing but innuendo" at the hearing and that the district court considered "no evidence whatsoever." Defendant filed a response in opposition to the motion in which he disputed that he was dissipating assets from New Mexico

and contested the Attorney General's interpretation of the real estate contract documenting sale of the Solano property. Moreover, Defendant had notice of and was present and represented by counsel at the hearing on the motion. There is no indication in the record that Defendant was denied the opportunity to present witnesses at the hearing. Finally, the Attorney General submitted a memorandum of the real estate contract as an exhibit, and Defendant himself submitted an exhibit for the district court's review. Defendant's right to due process of law was not violated.

**CONCLUSION**

{33} For the foregoing reasons, we affirm the district court's order increasing the amount of the writ of ne exeat bond.

{34} **IT IS SO ORDERED.**


_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____

**RODERICK T. KENNEDY, Judge**


_____

**LINDA M. VANZI, Judge**

21